Johnson, J.
From the foregoing statement it will be seen that the contract provided for by the ordinance is attacked as fundamentally invalid because in several respects in violation of the State Constitution. In the first place it is contended that the Bauer law and the ordinance violate Article XVIII, Section 5, of ■ the Constitution, which requires the acquirement, construction, ownership, leasing or operation of a public utility, or any contract therefor, to be by ordinance. It is insisted that in this case powers are given to the Rapid Transit Commission which the Constitution provides may only be exercised by ordinance. There is nothing in Section 5 to indicate that the term “ordinance” is used in any other than its ordinary sense. An ordinance is passed by the legislative branch of a municipal government; and, while the rule is well settled that legislative powers cannot be delegated, it is equally well settled that this principle does not prevent the appointment of administrative agents for the performance of administrative duties in the carrying out of the legislative will. 1 Dillon on Municipal Corporations (5 ed.), *294 Section 244; Tiedeman on Municipal Corporations, Section 113; City of Akron v. Dobson, 81 Ohio St., 66; Alter v. Cincinnati, 56 Ohio St., 47, 67, and Fassig v. State, ex rel., 95 Ohio St., 232.
In this instance the council of the city took all of the requisite steps in compliance with the requirements of the constitutional provision. It passed the ordinance for the establishment of the Board of Rapid Transit Commissioners, the ordinance for the issue of bonds' for the construction of the rapid transit railway system, and the ordinance whose validity is here under inquiry. The duties of the commissioners are administrative, and consist in the carrying out of the plan authorized by the Bauer law and the ordinance, and specifically defined in the latter.
In 1 Dillon on Municipal Corporations, supra, it is said at page 462: “But the principle that the exercise of municipal powers or discretion cannot be delegated does not prevent a corporation from appointing agents and empowering them to make contracts, or from appointing committees and investing them with duties of a ministerial or administrative character.”
It is also contended that the Bauer law is unconstitutional because it provides for the issuance of bonds in violation of Section 12, Article XVIII of the Constitution, and that the ordinance involved herein is also invalid because it cannot be made operative without the issuance of such bonds.
Section 12, Article XVIII of the Constitution, provides in part:
*295 “Any municipality which acquires, constructs or extends any public utility and desires to raise money for such purposes may issue mortgage bonds therefor beyond the general limit of bonded indebtedness prescribed by law; provided that such mortgage bonds issued beyond the general limit of bonded indebtedness prescribed by law shall not impose any liability upon such municipality but shall be secured only upon the property and revenues of such public utility, including a franchise stating the terms upon which, in case of foreclosure, the purchaser may operate the same, which franchise shall in no case extend for a longer period than twenty years from the date of the sale of such utility and franchise on foreclosure.”
By Section 7 of the Bauer law it is provided that “When the board of rapid transit commissioners deems it necessary tp issue bonds secured by the general credit of the municipality or to levy a tax for the purpose of carrying into effect the powers herein conferred the board shall, by written resolution, so declare its judgment and state therein the amount of bonds to be issued or the tax to be levied for such purposes and transmit the resolution to the city council, which may authorize the issuance of such bonds or levy a tax for the aforesaid purposes.”
Section 8 provides: “The aggregate amount of such bonds authorized by vote of the people or total indebtedness created under the authority of this act shall not be limited by the provisions of any act or statute of Ohio or law, except by the limitation herein set forth, and such aggregate or *296 total indebtedness shall not exceed two per cent, of the total value of all property in such municipal corporation as listed and assessed for taxation.”
The authority of the legislature to limit the power of municipalities to levy taxes and incur debts for local purposes is comprehensively and explicitly provided for in Section 13, Article XVIII of the Constitution.
It is contended that the provisions of the Bauer law above quoted are in violation of Section 12, Article XVIII of the Constitution. It is said that the statute provides that the council may authorize the issuing of bonds secured by the general credit of a municipality “beyond the general limit of the bonded indebtedness prescribed by law.” As to this it must be remembered that the Bauer law itself is a general law. It applies uniformly throughout the state to every city in the state. Therefore, when the Bauer law by Sections 7 and 8, above quoted, authorized the issuing of bonds secured by the general credit of the municipality, which shall not be limited by the provisions of any act or statute of Ohio, or law, except by the limitation therein set forth, and then fixes the limitation, the limitation so fixed becomes the general limit of bonded indebtedness prescribed by law for the purposes and within the limitation defined- in the act itself.
The general statutes of the state had theretofore provided that "the limitation upon the power of municipal corporations to issue bonds should be as follows: Two and one-half per cent, of the value of all property listed and assessed for taxation may *297 be issued by the city council without a vote of the people; and two and one-half per cent, additional may be issued with the approval of a vote of the people. This constituted the general limit of bonded indebtedness prescribed by law referred to in Section 12, Article XVIII of the Constitution, until another general law, to-wit, the Bauer law, increased the general limit.
It must be further remembered that the Constitution itself does not fix a limit to the bonded indebtedness which a municipality may incur, but it does fix a method for determining a limit beyond which the .municipality may not go, to-wit, action by the general assembly. This construction we think is supported by the quotations given in the briefs of counsel from the remarks of Mr. Harris speaking on this amendment in the Constitutional Convention: “Now, the moment that you have reached the maximum limit of five per cent, of the tax duplicate for general bonds unless you can persuade the general assembly to increase the limit, then your credit must be based on the value of the utility which you propose to construct or purchase, and every buyer is cautioned that those special bonds issued against that utility háve for security only that utility and by a franchise limited to twenty years only.” (2 Const. Debates, 1461.)
It is further contended that the referendum provided for in the Bauer law is in violation of Section 5, Article XVIII of the Constitution, and, as the ordinance- involved in this case followed the referendum provision of the Bauer law, that the ordinance is invalid. Section 5, Article XVIII, *298 provides that “Any municipality proceeding to acquire, construct, own, lease or operate a public utility, .or to contract with any person or company therefor, shall act by ordinance and no such ordinance shall take effect until after thirty days from its passage. If within said thirty days a petition signed by ten per centum of the electors of the municipality shall be filed with the executive authority thereof demanding a referendum on such ordinance it shall not take effect until submitted to the electors and approved by a maj’ority of those voting thereon.” It is also provided that the submission shall be governed by all the provisions of Section 8 of the Article.
It will be observed that this provision of the Constitution is permissive. It secures to any ten per centum of the electors of the city the right to invoke the referendum. Without this initial action of the electors there is no duty whatever resting upon any official or legislative body to provide for the submission referred to. In the Bauer law the general assembly was not content to allow that matter to be uncertain or dependent on the vigilance of citizens, but saw fit in the exercise of its legislative power to provide that the matters referred to should be submitted to a popular vote without any petition of the electors. Nevertheless, the fact that this provision was contained in the Bauer law, and in the ordinance, could not prevent the filing of a petition within thirty days from the passage of the ordinance by ten per centum of the electors of the municipality demanding a referendum in accordance with the provisions of the *299 Constitution, and if such had been filed it would have been necessary to make the submission in accordance with the terms of the Constitution, and this is true wholly independent of, and without reference to, the provisions in the Bauer law concerning the same. The legislature and the city council might have been wholly unwilling to adopt the legislation providing for this work without some affirmative action on the part of the legislative bodies to bring about a referendum.
We think it clear that it was not the intention of the framers of the amendment to the Constitution to take away from the legislature this power.
We now come to the most serious and important question in the case: Whether the ordinance, which grants the right to the street railway company to operate the Rapid Transit Route, which is to be built and owned by the city, and the section of the statute known as the Bauer law, which permits such grant, are invalid as being in contravention of .Section 6, Article VIII of the Constitution, viz., “No laws shall be passed authorizing any county, city, town or township, by vote of its citizens, or otherwise, to become a stockholder in any joint stock company, corporation, or association whatever; or to raise money for, or to loan its credit to, or in aid of, any such company, corporation, or association.”
This provision of the Constitution has been under consideration by this court in a number of cases. The first was that of Walker v. City of Cincinnati, 21 Ohio St., 14, 54. In that familiar case, the validity of the statute which authorized *300 the city to build a railroad, which was projected from Cincinnati to Chattanooga, and to lease it to an operating company, was upheld. In the opinion, the causes which led to the adoption of that provision of the Constitution are stated. It is recited that under the Constitution of 1802 numerous special acts of the legislature had authorized counties, cities and towns to become stockholders in private organizations organized for the construction of railroads to be owned and operated by such corporations; that many of these enterprises proved unprofitable; and that some wholly failed and heavy taxation followed to discharge the obligations. Under such circumstances this section was made a part of the state Constitution. The things which were intended to be forbidden are stated generally in the opinion. The court point out the difference between such forbidden undertakings and the one involved in that case, and say at page 54: “As this alliance between public and private interests is clearly prohibited in respect to all enterprises, of whatever kind, if we hold that these municipal bodies cannot do on their own account what they are forbidden to do on the joint account of themselves and private partners, it follows that they are powerless to make any improvement, however necessary, with their own means, and on their own sole account. We may be very sure that a purpose so unreasonable was never entertained.by the framers of the constitution.”
It is suggested that there has been a disposition to question the soundness of the decision in the Walker case. There has been here and elsewhere *301 a doubt which we think might well be entertained, whether a railroad built from a city in one state into and across adjoining states is such a public municipal purpose as to justify the use of municipal funds raised by taxation for its construction; although in this particular instance the enterprise has proven to be a most fortunate one for the city. There have also been expressions in the decisions of this court which indicate a view that the act involved in the Walker case was an example of special legislation, which is invalid as being classification beyond such as authorized by the Constitution. Classification of that character was finally denounced in State, ex rel., v. Jones, 66 Ohio St., 453. The infirmities suggested, however, have no application to the case we have here.
In Taylor v. Commissioners of Ross County, 23 Ohio St., 22, it was held that where a statute authorizes a county, township, or municipality,' to levy taxes on the taxable property of the locality, for the purpose of building so much of a railroad as can be built for a certain amount levied, and the part of the railroad so to be built can be of no public utility unless used to accomplish an unconstitutional purpose, such tax is illegal and cannot be imposed. In the analysis of the statute, it is said by the court, at page 81: “It would be within their power to sell what is called the road at any time; certainly after the making of the contract. Now, in such case, what is sold? Substantially the right to use the public bonds to construct a work which becomes the property of the purchaser as fastas- it is built; * * This is, in effect, the *302 same as if the purchaser had projected the road to be built on his own account, and the local authorities had agreed to aid him to the amount of the bonds."
The statute was denounced as being an attempt to accomplish by indirection what it would be a plain violation of the Constitution to do directly. With reference to the statute involved in the Walker case the court say at page 77: “The proprietary interest in the road when completed, is as fully in the municipality as that of any other of its public works. It is the road ‘owned,’ by the municipality that is authorized to be leased. The public use for which the road was built, is to be preserved, and the power of leasing the right to use and operate it, is designed only as a mode of making such use available to the public."
In Wyscaver v. Atkinson, 37 Ohio St., 80, a statute similar to that involved in the Taylor case, supra, was also held invalid.
In Alter v. City of Cincinnati et al., 56 Ohio St., 47, the court had under consideration the validity of an act providing for the construction or enlargement of waterworks by cities and authorizing a contract in the name of the city with any person, company or corporation for the construction or enlargement of such waterworks as an entirety and for the exclusive privilege of connecting such enlargements with the existing waterworks. It really provided that the city and the private company might become joint owners of indivisible interests- in a single and entire property. The court say at page 65: “When the enlarge *303 ments, extensions, improvements and additions shall be thus made, completed and connected with the existing waterworks so owned by the city, the enlargements, extensions, improvements and additions, together with existing works, all taken together, will constitute one completed whole — one waterworks system, one waterworks — owned in part by the city, and in part by the individual or corporation, and thereby the union of public and private capital and funds in one enterprise will become complete. * * * It would be a joining of two properties owned by different parties, together, to make one property, the parts owned by each being necessary to the successful operation of the whole, and each owner having his say as to the terms and conditions upon which the whole should be operated.”
In September, 1912, Section 6, Article VIII of the Constitution, was amended, but the provisions of the section which are involved here were substantially readop'ted. The adjudications of this court, in which the purpose and effect of the section have been stated and construed, have the added force and authority which accompanies the presumption that the constitutional convention and the people in readopting the provision had in mind its judicial construction and gave it as so construed their sanction and approval. Therefore, in the language of the court at page 54 of the Walker case, it may be said to be definitely determined that: “The mischief which this section interdicts is a business partnership between a municipality or subdivision of the State, and individuals or private *304 corporations or associations. It forbids the union of public and private capital or credit in any enterprise whatever. In no project originated by individuals, whether associated or otherwise, with a view to gain, are the municipal bodies named permitted to participate in such manner as to incur pecuniary expense or liability. They may neither become stockholders nor furnish money or credit for the benefit of the parties interested therein.”
At the same time that Section 6 of Article VIII was readopted, in September, 1912, Article XVIII, known as the “Municipal Home Rule Amendment,” was adopted. By Section 4 of this Article it is provided that “Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service.”
There is now no doubt as to the authority of a municipality to go forward with the enterprises, and for the purposes referred to in that section. By the provisions of Sections 4 and 5 of Article XVIII plenary power is given to the municipality to deal with the subject. However, these sections of Article XVIII must be construed with Section 6 of Article VIII, which, as already stated, was readopted at the same time. They are entirely consistent and full effect must be given to all of them.
It will not be denied that the Rapid Transit Railway, which is to be constructed by the city under the provisions of the ordinance involved in this case, is such a public utility as contemplated by *305 Sections 4 and 5 of Article XVIII, nor that the city is empowered to construct it within the rules laid down in all of the cases referred to, as well as within the manifest meaning of the constitutional provisions. The city is empowered to contract with others for the lease or operation of the railway.
So that we have here this situation:
(a) The companies have and own a system of street railways already equipped and in operation.
(&) The city proposes to construct and own a subway with all of the appurtenant properties described in the ordinance..
(c) The city desires to contract for the operation of the subway to be owned by it so that the “product of service” of the public utility may be “supplied to the municipality and its inhabitants.”
This, the city is expressly empowered to do. In order to accomplish this purpose, the city and street railway company enter into an agreement and the ordinance here in question is passed, which expresses the terms of the agreement. The serious question is whether the ordinance provides for a contract or lease with the street railway company such that the city shall in effect raise money for or loan its credit to or in aid of the street railway company; that is, whether it is in effect the doing of the things, or any of them, which are prohibited by Section 6 of Article VIII of the Constitution as now in effect and as construed by the decisions of this court.
It is vigorously contended at the bar, and in the able and comprehensive briefs of counsel for plain *306 tiff, that the arrangement amounts to a business partnership between the city and the street railway company, because the property is to be operated by the railway company as a whole, and the gross receipts of the company from all sources are to be distributed in payment of expenses of operation, interest, and sinking funds on bonds issued for additions to the property, as well as in payment of rental for use of the Rapid Transit Route and the other distributions provided for in the ordinance.
We are not able to see that the arrangement contemplated constitutes a partnership in a legal sense. It is elementary, when a partnership is formed and conducted between two or more persons, that each of the members is liable for the debts of the partnership. Even in a special or limited partnership, the property which each member contributes to the business of the partnership is pledged and liable to payment of the obligations that arise in any of the business done by the partnership. This essential element is lacking in the arrangement proposed by this ordinance. The property of the city is, and will be, separate and distinct from that of the company. There is no such union as amounts to an intermingling of these separate and distinct properties. The company is to furnish cars, and power to operate all of the routes, at a single fare, and is to give transfers on all routes; and, while the city board has general supervision of the service, maintenance, type of cars, changes and extensions, and provision is made for the use'of the route by all other street, electric, suburban, interurban and similar roads, the city is not liable for damages *307 resulting from the operation of the roads and the company cannot bind it for any of its expenses or financial obligations of any kind. Everyone is bound to know the constitutional limitation which prevents the city from incurring obligations in aid of the company.
It is urged that the amount of compensation and the method of fixing it is a matter for the determination of the city and its authorities in negotiation with the company, and that it is not a subject of judicial inquiry.
Where the parties have full capacity to contract, this is true, in the absence of fraud; and no fraud or bad faith is suggested in this case. But we are here confronted with the question whether the contract provides for such a disposition of the income derived from the use and operation of the city’s property as amounts to a loaning of the city’s credit in aid of the company.
Section 22 of the ordinance provides for the distribution of the gross receipts received by the company from all sources in the operation of the road. After providing for the payment therefrom of all expenses of operation, depreciation, maintenance, etc., and for sinking fund and interest on a sum of $4,609,000, which is called the “reducible debt” of the companies, it is then provided in Subdivision D, of Section 22, that the interest, dividend, sinking fund or retirement payments, if any, on securities hereafter issued by or for the companies for future capital expenditures for cars, plants, etc., and for refunding any part of the reducible debt, shall be paid. It is provided that the amount and character *308 of such securities to be sold shall be subject to the. approval of the proper public authorities. Subdivision E, of Section 22, then provides for the payment to the traction company of $416,000 annually, as return on capital invested, subject to reduction through an amortization fund provided for. After these payments, provision is made for the payment to the city'of an annual sum of $325,-000, interest and sinking fund, and the amortization fund; and for a division of the balance, 45 per cent, to the company and 55 per cent, to the city. Section 25 of the ordinance reserves to the city the right to purchase the system at a stipulated price, plus the amount necessary to discharge the reducible debt and the outstanding securities hereafter issued, as above provided for.
Here are plain provisions for the distribution of the proceeds from the operation of the properties, including the city’s property, and for the preferential payment not only of existing obligations of the company but of all “securities hereafter issued by it.’ That .is to say, a purchaser of the securities now outstanding or hereafter issued by the company would rely on the provision that the income of all the properties, including the city’s, would be applicable to the payment of the security held by him before the city received anything. It is in effect a lending of the city’s credit in aid of the company. The earnings on the city’s road, its credit, are loaned to the company. It is true, as already shown, that the city’s property is not pledged or liable, and the city itself does not incur any liability in connection with the securities *309 and obligations referred to, but the income is pledged to their payment, and the control of the income is the thing that will give substance and effect to the credit and financial power of those controlling or receiving it. It is the income that gives value to such a property as this. From the nature of the property, its purposes and uses, a pledge of the income is a pledge of the capital.
In this case the earnings — the income of the city’s property — are pledged as security for the securities now existing and hereafter issued by the company. It is the exact thing which the constitution expressly prohibits. We, therefore, think it clear that these provisions of the ordinance with reference to the distribution of the gross receipts are in violation of the constitutional inhibition. It must be remembered that the thing prohibited is not only the gift of money or property but also the loan of credit to or in aid of any such company.
This enterprise was initiated in recognition of the urgent needs of the city for better means of transportation for the large population in its suburbs which participates in its manifold activities. But it is not within the sphere of the court’s power to consider the wisdom, safety or advantage of the proposed arrangement, and these considerations have nothing to do with the authority of the city to so loan its credit. The constitution is the superior law and the ultimate criterion. The court’s sole duty is to enforce it. The office of a j’udge is jus dicere non jus dare.
As already indicated, we hold that the city has the authority to proceed in the manner contem *310 plated with the construction and completion of the subway and rapid transit system, and that it has the right to contract with the railway company for the operation thereof. It has also the right to provide in the contract for the payment of all expenses of operation, depreciation, maintenance, etc., out of the gross proceeds received from all sources of operation of the road, under such terms and conditions as the city and its duly authorized officers and boards may deem to be for its best interests. But the rental or compensation to be paid to the city must be determined by some method which, while not necessarily fixing a sum certain, yet shall not leave the city’s fair and just rent or portion of the earnings subject to hypothecation by the company or application to the company’s independent obligations.

Writ allowed.

Nichols, C. J., Wanamaker, Newman, Matthias and Donahue, JJ., concur.